IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
May 5, 2009 Session

**STATE OF TENNESSEE v. KEVIN McDOUGLE**

**Direct Appeal from the Criminal Court for Shelby County**
**No. 06-04209, 07-01739     W. Mark Ward, Judge**

_____

**No. W2007-01877-CCA-R3-CD  - Filed May 24, 2010**

_____

Following a jury trial, Defendant, Kevin McDougle, was convicted of two counts of aggravated robbery, a Class B felony, and one count of aggravated assault, a Class C felony, in case no. 06-04209.  The trial court sentenced Defendant as a Range I, standard offender, to twelve years for each aggravated robbery conviction and six years for his aggravated assault conviction.  Defendant was convicted in case no. 07-01739 of the offense of unlawful possession of a handgun by a convicted felon, a Class E felony.  The trial court sentenced Defendant to two years for this conviction.  The trial court ordered Defendant to serve all of his sentences consecutively for an effective sentence of thirty-two years.  On appeal, Defendant argues that (1) the trial court erred in denying his motion to sever; (2) the trial court erred in providing a jury instruction on flight; (3) the imposition of consecutive sentencing violates his Sixth Amendment right to trial by jury; and (4) the trial court erred in finding that Defendant was a dangerous offender for consecutive sentencing purposes.  After a thorough review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which J. C. MCLIN and CAMILLE R. MCMULLEN, JJ., joined.

Claiborne H. Ferguson, Memphis, Tennessee (on appeal) and Stephanie Calvert, Memphis, Tennessee (at trial) for the appellant, Kevin McDougle.

Robert E. Cooper, Jr., Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; William L. Gibbons, District Attorney General; Dean DeCandia, Assistant District Attorney General; and Scot Bearup, Assistant District Attorney General, for the appellee, the State of Tennessee.

# OPINION

## I. Background

Although Defendant does not challenge the sufficiency of the convicting evidence, we will briefly review the evidence supporting Defendant's convictions. James McGowan testified that he parked his taxicab at approximately 3:00 p.m. on October 25, 2005, at the intersection of Evergreen Street and Jackson Avenue in Memphis. Roderick Baker and his young son got into the vehicle to talk to Mr. McGowan. Mr. Baker and Mr. McGowan are friends. As they were talking, a man, whom Mr. McGowan identified at trial as Defendant, walked up to the taxicab and asked Mr. McGowan for a ride. Mr. McGowan told Defendant that he was busy, but he said that he would call Defendant another taxicab. Defendant pulled out a gun, pointed it at Mr. McGowan's face, and said, "Give me your money." Mr. McGowan said that Defendant took approximately one hundred dollars from him. A woman, identified at trial as Erica Newburn, was with Defendant. Mr. McGowan stated that Ms. Newburn stood with her back to the taxicab during the robbery and watched the area. After he took money from Mr. McGowan and Mr. Baker, Defendant put the gun in his pants, and he and Ms. Newburn walked away from the taxicab.

Mr. McGowan called 911 and then drove a short distance up the street until he could see Defendant. Defendant and Ms. Newburn boarded a public bus traveling eastbound on Jackson Avenue. Mr. McGowan followed the bus, and Defendant and his companion exited the bus at the intersection of Jackson Avenue and Warford Street, an industrial area. Mr. McGowan observed Defendant attempt to flag down a passing vehicle with the gun in his hand. The vehicle drove past Defendant and Ms. Newburn.

Mr. McGowan flagged down a patrol car and told Officer Billy Jackson that Defendant had just robbed him. Officer Jackson approached Defendant and spoke to him. Mr. McGowan said that the two men appeared to converse for a short time, and then Defendant and Ms. Newburn ran away in opposite directions. Officer Jackson chased Defendant, and during the pursuit, Defendant turned around and pointed his gun at Officer Jackson. Officer Jackson caught up with Defendant when Defendant tried to scale a fence. The two men wrestled, and then Defendant scaled the fence. Mr. McGowan provided a written statement about the incident later that day. On October 26, 2005, Mr. McGowan identified Defendant as the perpetrator from a photographic line-up.

Roderick Baker testified that he and his young son were sitting in Mr. McGowan's taxicab when a man and a woman walked up and asked for a ride. Mr. Baker identified Defendant at trial as the man who approached the taxicab. Mr. McGowan told Defendant that he would call another taxicab. Defendant started to walk to the rear of the taxicab. He

stopped, pulled a pistol out of his pants, and walked back to the front driver's side window. Defendant said, "You know what this is," and Mr. McGowan handed Defendant some money. Defendant pointed the gun at Mr. Baker, and Mr. Baker handed him eighty dollars. Mr. Baker said that Defendant and Ms. Newburn boarded a public bus, and Mr. Baker got out of the taxicab and drove away in his vehicle. Mr. Baker identified Defendant from a photographic line-up on October 26, 2005, as the perpetrator of the offense.

Officer Billy Jackson, with the Memphis Police Department, testified that Mr. McGowan flagged him down on October 25, 2005. Mr. McGowan told Officer Jackson that he had just been robbed, and the perpetrator and his female companion were walking up Warford Street. Officer Jackson identified Defendant at trial as the individual he approached on Warford Street. Officer Jackson asked Defendant his name and where he had recently been. Defendant and Ms. Newburn began moving apart from one another. Officer Jackson asked both of them for identification. When neither could produce any identification, Officer Jackson told Ms. Newburn to sit down. Defendant said that he was not going to go back to jail and began running. Ms. Newburn ran in the opposite direction from Defendant.

Officer Jackson pursued Defendant. He saw Defendant pull a black 9 mm gun out of his pants, and Officer Jackson also pulled out his pistol. Officer Jackson stated that Defendant turned and pointed his weapon at Officer Jackson on three separate occasions during the pursuit. Defendant then returned the gun to his pants and jumped onto a fence. Officer Jackson pulled him down. Defendant pulled out his gun again and pointed it at Officer Jackson's chest. Officer Jackson and Defendant struggled, and Officer Jackson managed to kick the gun away. Defendant pushed Officer Jackson down and jumped over the fence. Officer Jackson said that Defendant's gun contained three rounds of ammunition when the weapon was recovered. Police officers from three different precincts responded to the dispatcher's call about the incident. The officers searched unsuccessfully for Defendant both by patrol car and by helicopter. Officer Jackson identified Defendant from a photographic lineup on October 26, 2005, as the man who had pointed a gun at him on Warford Street.

Quinton Maples, an officer with the Memphis Police Department, testified that an anonymous caller provided Defendant's location through Crime Stoppers, and an arrest warrant was issued for Defendant on November 1, 2005. Defendant was exiting the residence when Officer Maples arrived. Officer Maples asked Defendant for his name, Defendant "mumbled something," and then ran. Officer Maples chased Defendant for approximately one hundred yards and then managed to tackle Defendant and physically restrain him.

Gail Rankins testified that she is employed by the Criminal Court Clerk's office and maintains the records of the court as part of her job duties. Ms. Rankins testified that according to the court's records contained in file no. 283458, Defendant was convicted of aggravated burglary on February 3, 2003, pursuant to a negotiated plea agreement. Linda Rapper testified that she was employed by the Shelby County Sheriff's Department as a fingerprint examiner. Ms. Rapper stated that she took Defendant's fingerprints prior to trial, and his fingerprints matched the fingerprints in file no. 283458.

## II. Motion to Sever

Defendant argues that the trial court erred in granting the State's motion to consolidate the offense of unlawful possession of a weapon by a convicted felon in case no. 07-01739 with the offenses of aggravated robbery and aggravated assault in case no. 06-04209. Defendant contends that the joinder of the weapons offense with the other three offenses was prejudicial because it allowed the jury to hear evidence of a prior conviction, which evidence would have been otherwise inadmissible pursuant to Rule 404(b) of the Tennessee Rules of Evidence. On appeal, the State first contends that Defendant has waived this issue because he did not file a motion to sever the offenses. *See* Tenn. R. Crim. P. 13(b)(2)(E). Alternatively, the State submits that the offenses constituted a single criminal episode and were thus subject to mandatory, rather than permissive joinder, pursuant to Rule 8(a) of the Tennessee Rules of Criminal Procedure. The State thus argues that Defendant has failed to show that severance was necessary "to promote a fair determination of [his] guilt or innocence of each offense." Tenn. R. Crim. P. 14(b)(2)(A).

On the morning of trial and prior to voir dire, the State moved to consolidate case no. 07-01739 with case no. 06-04209 pursuant to Rule 13(a) of the Tennessee Rules of Criminal Procedure. Rule 13(a) provides that "[t]he court may order consolidation for trial of two or more indictments, presentments, or informations if the offenses and all defendants could have been joined in a single indictment, presentment, or information pursuant to Rule 8." Tenn. R. Crim. P. 13(a). The trial court found that the weapons offense constituted "part of a common scheme or plan" with the other offenses. *See* Tenn. R. Crim. P. 14(b)(1). The trial court further found that the evidence that Defendant was in possession of a weapon was relevant to show that Defendant possessed or display a deadly weapon in the trial of the other offenses. T.C.A. §§ 39-13-102(a)(1)(B), 39-13-402(a)(1). The trial court did not make a specific finding that Defendant's status as a convicted felon was relevant to some material issue in the trial of the other offenses. The trial court, however, found that the probative value of the evidence of Defendant's prior felony conviction, an element of the weapons offense, was not outweighed by its prejudicial effect. The trial court observed that Defendant's prior conviction of aggravated burglary was "distinctly different" from the

-4-

charged offenses, and the trial court noted that it would provide a limiting instruction to the jury regarding the prior conviction.

We begin with the State's waiver argument. Our supreme court has instructed that when the State seeks to consolidate offenses pursuant to Rule 13 of the Tennessee Rules of Criminal Procedure, and the defendant's objection to consolidation is overruled, "the defendant is not then required to immediately move for a severance in order to preserve a severance issue for appeal." *Spicer v. State*, 12 S.W.3d 438, 444 (Tenn. 2000). Under circumstances such as the ones presented in the case *sub judice*, Defendant's objection to the State's motion to consolidate has "the same procedural and substantive effect as a formal motion to sever." *Id*. We will, therefore, consider the merits of Defendant's issue on appeal.

A trial court's ruling concerning joinder and severance of offenses is reviewed for an abuse of discretion. *Id*. at 442. As such, a trial court's decision to consolidate or to sever offenses will not be reversed unless the "court applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining." *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999) (quoting *State v. Shuck*, 953 S.W.2d 662, 669 (Tenn. 1997)).

A joinder of multiple offenses may be either mandatory or permissive. *See* Tenn. R. Crim. P. 8(a)(1), 8(b)(2). Permissive joinder is appropriate when "the offenses constitute parts of a common scheme or plan" or "they are of the same or similar character." *Id*. 8(b)(2). "In Tennessee, there are three types of common scheme or plan evidence: (1) offenses that reveal a distinctive design or are so similar as to constitute 'signature' crimes; (2) offenses that are part of a larger, continuing plan or conspiracy; and (3) offenses that are all part of the same criminal transaction." *Shirley*, 6 S.W.3d at 248 (citing Neil P. Cohen et al., Tennessee Law of Evidence § 404.11, at 180 (3d ed.1995)). A defendant is entitled to a severance of permissively joined offenses "unless the offenses are part of a common scheme or plan, and the evidence of one would be admissible in the trial of the others." Tenn. R. Crim. P. 14(b)(1).

On the other hand, "[t]wo or more offenses must be joined or consolidated if (1) the offenses arise from the same conduct or criminal episode; (2) the conduct is known to the appropriate prosecuting official at the time of the return of the indictment; and (3) the offenses fall within the jurisdiction of a single court." *State v. Baird*, 88 S.W.3d 617, 620 (Tenn. 2001) (citing Tenn. R. Crim. P. 8(a)); *see also State v. Goodwin*, 143 S.W.3d 771, 780 (Tenn. 2004). In the case of mandatorily joined offenses, the trial court may deny consolidation before trial only if it "finds a severance appropriate to promote a fair determination of the defendant's guilt or innocence of each offense." Tenn. R. Crim. P. 14(b)(2)(A); *Shirley*, 6 S.W.3d at 246 n.3.

The Advisory Commission Comments to Rule 8 provide, in pertinent part:

> This rule is designed to encourage the disposition in a single trial of multiple offenses arising from the same conduct and from the same criminal episode, and should therefore promote efficiency and economy. Where such joinder of offenses might give rise to an injustice, Rule 14(b)(2) allows the trial court to relax the rule.

Thus, our supreme court has concluded that "[t]he rule clearly permits a subsequently returned indictment to be joined with a previous indictment where the alleged offenses relate to the same criminal episode. *State v. Carruthers*, 35 S.W.3d 516, 573 (Tenn. 2000) (citing *King v. State*, 717 S.W.2d 306 (Tenn. Crim. App. 1986)).

Although the trial court approached the issue at trial as one involving the permissive joinder of offenses, we conclude that the weapons offense was subject to mandatory joinder with the aggravated robbery and aggravated assault offenses. "A 'criminal episode relates to several distinct offenses which arise out of separate actions or conduct but which occur in a closely connected series of events in place and time.'" *Baird*, 88 S.W.3d at 620 (quoting D. Raybin, Tennessee Criminal Practice and Procedure § 17.23, p. 490 (1984)). After robbing Mr. McGowan and Mr. Barker, Defendant left the scene and was confronted a short time later by Officer Jackson, which confrontation led to the aggravated assault charge. The gun was used to commit each offense and the use of a gun escalated both offenses to an aggravated status. Therefore, we conclude that the weapons offense was part of the same criminal episode, the prosecutor was aware of the use of a weapon at the time of the return of the indictment, and "the offenses fall within the jurisdiction of a single court." Accordingly, Defendant's argument on appeal that he had the right to the severance of the offenses under a permissive joinder analysis is of no avail. Instead, to establish an abuse of discretion on the part of the trial court, Defendant is required to show that severance was "necessary to achieve a fair determination of [his] guilt or innocence of each offense." Tenn. R. Crim. P. 14(b)(ii).

Defendant contends that he was prejudiced by the joinder of offenses because the jury was allowed to hear testimony concerning his prior conviction which would have been inadmissible pursuant to Rule 404(b) of the Tennessee Rules of Evidence in a separate trial on the aggravated robbery and aggravated assault offenses. Rule 404(b) of the Tennessee Rules of Evidence excludes evidence of "other crimes, wrongs, or acts" committed by the defendant when offered only to show the defendant's propensity to commit the crime charged. Generally, evidence that a defendant has committed a prior crime is inadmissible because the evidence lacks relevance and "invites the finder of fact to infer guilt from propensity." *State v. Hallock*, 875 S.W.2d 285, 290 (Tenn. Crim. App. 1993).

Evidence of Defendant's convicted felon status is an essential element of his weapons offense and, therefore, evidence of his prior conviction constitutes relevant evidence under Rule 404(b) in a trial on *this* offense. *See* T.C.A. § 39-17-1307(b)(1)(A); *State v. James*, 81 S.W.3d 751, 761 (Tenn. 2002). However, evidence of Defendant's convicted felon status would normally not be admissible in a separate trial on the aggravated robbery and aggravated assault charges under Rule 404(b) of the Tennessee Rules of Evidence.

However, in this case, the trial court provided a limiting instruction to the jury at the conclusion of Ms. Rankins' testimony that it could only consider Defendant's prior aggravated burglary conviction for the purpose of proving the elements of the weapons charge and not as evidence of Defendant's propensity to commit a crime. The jury is presumed to follow the instructions of the court. *See State v. Banks*, 271 S.W.3d 90, 134 (Tenn. 2008) (citations omitted). We conclude that under the circumstances presented in this case, severance of the weapons charge from the aggravated robbery and aggravated assault charges was not necessary "to promote a fair determination of [Defendant's] guilt or innocence of each offense."

However, if the trial court erred in joining the offenses for trial, we conclude that it was harmless error. Evidence of the aggravated robbery and aggravated assault offenses would be admissible in a separate trial of the weapons offense to prove a contextual background. *State v. Gillilard*, 22 S.W.3d 266, 272 (Tenn. 2000). Moreover, the witnesses' identification of Defendant as the perpetrator before and at trial and the other evidence presented provided overwhelming proof of Defendant's guilt of aggravated robbery and aggravated assault. *See Spicer*, 12 S.W.3d at 447-448 (quoting *Delk v. State*, 590 S.W.2d 435, 442 (Tenn. 1979) (observing that "[i]n most severance cases, 'the line between harmless and prejudicial error is in direct proportion to the degree ... by which proof exceeds the standard required to convict . . .'")). Defendant is not entitled to relief on this issue.

## III. Instruction to the Jury on Flight

Defendant argues that the trial court's instruction to the jury on the law of flight was unwarranted by the evidence. Defendant submits that no evidence was presented to support a finding that he was "hiding out" or attempting to conceal himself when he was apprehended by Officer Maples on November 1, 2005.

The trial court has a duty "to give a complete charge of the law applicable to the facts of a case." *State v. Harbison*, 704 S.W.2d 314, 319 (Tenn. 1986); *see also* Tenn. R. Crim. P. 30. "In order for a trial court to charge the jury on flight as an inference of guilt, there must be sufficient evidence to support such instruction." *State v. Berry*, 141 S.W.3d 549, 588 (Tenn. 2004). Sufficient evidence to support such an instruction requires "'both a

leaving the scene of the difficulty and a subsequent hiding out, evasion, or concealment in the community.'" *State v. Burns*, 979 S.W.2d 276, 289-90 (Tenn. 1998) (quoting *State v. Payton*, 782 S.W.2d 490, 498 (Tenn. Crim. App. 1989)). Our Supreme Court has held that "[a] flight instruction is not prohibited when there are multiple motives for flight" and that "[a] defendant's specific intent for fleeing a scene is a jury question." *Berry*, 141 S.W.3d at 588.

Defendant focuses on the events surrounding his arrest on November 1, 2005, to support his argument that a flight instruction was not warranted. However, the trial court found that Defendant robbed Mr. McGowan and Mr. Baker at gun point and then left the scene of the crime by boarding a public bus. A few minutes later, Mr. McGowan flagged down Officer Jackson and identified Defendant as the man who had robbed him a few minutes earlier. When Officer Jackson attempted to question Defendant about Mr. McGowan's allegation, Defendant fled to evade arrest.

Based on our review, we conclude that this evidence was sufficient to establish both a "leaving of the scene" and a subsequent evasion. Accordingly, the trial court did not err by providing the instruction. Defendant is not entitled to relief on this issue.

## IV. Sixth Amendment Challenge to Consecutive Sentencing

Defendant argues that the imposition of consecutive sentencing under the Sentencing Act of 1989 violates his Sixth Amendment right to a jury trial. Defendant acknowledges that at the time this matter was on appeal, our supreme court had rejected this argument. *State v. Allen*, 259 S.W.3d 671 (Tenn. 2008). In *Allen*, our supreme court held that:

> [t]he decision whether to impose consecutive sentences for multiple crimes is a decision about the manner in which a defendant serves his or her multiple punishments. Whether or not to "stack" sentences for multiple crimes is therefore akin to a trial court's decision as to how and where a defendant serves his sentences: on probation, on community corrections, in split confinement, or in the penitentiary. *Apprendi* and *Blakely* simply do not require the jury to determine the manner in which a defendant serves multiple sentences. That Tennessee's statutes require (in most instances) trial courts to make specific factual findings before imposing consecutive sentences does not extend the reach of *Apprendi* and *Blakely*.

*Id*. at 689 -690. On January 14, 2009, after the submission of Defendant's brief, the United States Supreme Court concluded that a defendant's constitutional right to trial by jury is not implicated by sentencing structures, such as Tennessee's, which require the trial court "to

make certain predicate fact findings" before imposing consecutive sentencing. *Oregon v. Ice*, ___ U.S. ___, 129 S. Ct. 711, 715 n.3, 716-720 (2009). Thus, Defendant is not entitled to relief on this issue.

## V. Consecutive Sentencing Generally

Defendant also argues that the trial court erred in ordering him to serve his sentences consecutively because the evidence does not support the trial court's finding that he is a dangerous offender for sentencing purposes. Defendant also submits that his criminal history, which includes juvenile adjudications, is not so extensive as to warrant an extended sentence.

On appeal, the party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is improper. *See* T.C.A. § 40-35-401, Sentencing Comm'n Comments; *see also State v. Arnett*, 49 S.W.3d 250, 257 (Tenn. 2001). When a defendant challenges the length, range, or manner of service of a sentence, it is the duty of this Court to conduct a de novo review on the record with a presumption that the determinations made by the court from which the appeal is taken are correct. T.C.A. § 40-35-401(d). This presumption of correctness, however, "'is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances.'" *State v. Carter*, 254 S.W.3d 335, 344-45 (Tenn. 2008) (quoting *State v. Ashby*, 823 S.W.2d 166, 169 Tenn. 1991)). "If, however, the trial court applies inappropriate mitigating and/or enhancement factors or otherwise fails to follow the Sentencing Act, the presumption of correctness fails," and our review is de novo. *Carter*, 254 S.W.3d at 345 (quoting *State v. Shelton*, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992); *State v. Pierce*, 138 S.W.3d 820, 827 (Tenn. 2004)).

A trial court is mandated by the Sentencing Act to "impose a sentence within the range of punishment." T.C.A. § 40-35-210(c). A trial court, however, "is no longer required to begin with a presumptive sentence subject to increase and decrease on the basis of enhancement and mitigating factors." *Carter*, 254 S.W.3d at 346. Therefore, an appellate court is "bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." *Id*.

In conducting a de novo review of a sentence, this Court must consider (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated

sections 40-35-113 and 40-35-114; (f) any statistical information provided by the Administrative Office of the Courts as to Tennessee sentencing practices for similar offenses; and (g) any statement the defendant wishes to make in the defendant's own behalf about sentencing. T.C.A. § 40-35-210(b); *see also Carter*, 254 S.W.3d at 343; *State v. Imfeld*, 70 S.W.3d 698, 704 (Tenn. 2002).

A trial court may impose consecutive sentencing upon a determination that one or more of the criteria set forth in Tennessee Code Annotated section 40-35-115(b) exists. Included within this criteria is a finding that "[t]he defendant is an offender whose record of criminal activity is extensive." T.C.A. § 40-35-115(b)(2). Also, the trial court may order sentences to run consecutively if it finds by a preponderance of the evidence that "[t]he defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high." T.C.A. § 40-35-115(b)(4). When imposing consecutive sentences based on the defendant's status as a dangerous offender, the trial court must, "in addition to the application of general principles of sentencing," find "that an extended sentence is necessary to protect the public against further criminal conduct by the defendant and that the consecutive sentences must reasonably relate to the severity of the offenses committed." *State v. Wilkerson*, 905 S.W.2d 933, 939 (Tenn. 1995). Additionally, the trial court should consider general sentencing principles, including whether the length of a sentence is justly deserved in relation to the seriousness of the offense. *Imfeld*, 70 S.W.3d at 708. The decision to impose consecutive sentencing falls within the sound discretion of the trial court. *See State v. Adams*, 973 S.W.2d 224, 230-31 (Tenn. Crim. App. 1997).

At the sentencing hearing, the State relied on Defendant's presentence report which was introduced as an exhibit without objection. Defendant did not present any evidence at the sentencing hearing. According to the presentence report, Defendant was twenty-three years old at the time of sentencing. Defendant reported that he dropped out of school in the eighth grade, and he did not report any history of employment.

Defendant was first placed in the custody of the Department of Children's Services ("DCS") in 1997 when he was thirteen years old. He was subsequently placed in several different facilities before his eighteenth birthday following episodes of violent behavior toward his peers and the staff at the facility. Defendant reported in the presentence report that he suffers from bipolar disorder and has been treated at the Western Mental Health Institute (the "Institute").

According to the evaluations attached as an exhibit to the presentence report, Defendant was admitted to the Institute in November 1999, at the request of DCS following a display of disruptive and aggressive behavior at the facility in which he was then residing.

Testing revealed that Defendant had a composite IQ score of 83, and no sign of mental retardation or psychopathologic disorders. The evaluator concluded that Defendant should be returned to the facility "where he can learn to be responsible for his decisions, attitudes and behavior and learn to take the consequences of the same. While he may injure others by fighting or attempting to get even, it is by choice and not because of mental illness."

In 2001, Defendant was again admitted to the Institute from the Wilder Youth Development Center "following threats to harm himself and others." During the evaluation, Defendant reported a past history of using crack cocaine and alcohol, and selling drugs. Defendant was prescribed Depakote and Seroquel to help control his behavior and aggression. The evaluator noted that Defendant possessed "adequate verbal skills [and] average intelligence" and concluded that a diagnosis of impulse control disorder was appropriate.

Defendant had two juvenile adjudications for aggravated burglary in 1997, a juvenile adjudication for theft of property valued at less than $500.00 in 1998, a juvenile adjudication for assault in 1999, and juvenile adjudications for burglary of a building and theft of a vehicle in 2001. In addition, Defendant committed several delinquent acts which were "adjusted [sic] nonjudicially," which include burglary of a building, evading arrest, vandalism under $500, four acts of criminal trespassing, disorderly conduct, and two escapes from the custody of DCS.

In 2003, when he was eighteen years old, Defendant was convicted of aggravated burglary, a Class C felony, and was sentenced as a Range I, standard offender, to three years. Defendant was convicted of two counts of misdemeanor assault and one count of vandalism in February 2005. In November 2005, Defendant was convicted of unlawful possession of a weapon, a Class A misdemeanor.

As a Range I, standard offender, Defendant was subject to a sentence of between eight and twelve years for each aggravated robbery conviction, a sentence of between three and six years for his aggravated assault conviction, and a sentence of between one and two years for his weapons conviction. In determining the length of Defendant's sentences, the trial court found that (1) Defendant has a history of previous criminal convictions beyond those necessary to establish his sentencing range; (2) Defendant was a leader in the commission of the offenses; and (3) Defendant was adjudicated to have committed delinquent acts which would have been felonies if committed as an adult. *See* T.C.A. § 40-35-114(1), (2), and (16). In addition, as to the aggravated assault conviction, the trial court found that the victim of the offense was a law enforcement official performing an official duty, and Defendant knew or should have known that the victim was such an officer. *See id*. § 40-35-114(19). The trial court found that no mitigating factors were present. Based on the presence of three

enhancement factors, the trial court sentenced Defendant to twelve years for each aggravated robbery conviction and two years for his conviction of unlawful possession of a weapon by a convicted felony. Based on the presence of four enhancement factors, the trial court sentenced Defendant to six years for his assault conviction.

In considering the manner of service of his sentences, the trial court found that Defendant was a dangerous offender "whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high." *See id*. 40-35-115(b)(4). The trial court also found that an extended sentence was necessary to protect society from future criminal conduct by Defendant, and the aggregate length of the sentence reasonably related to the severity of the offenses. *Wilkerson*, 905 S.W.2d at 939. The trial court stated, however, that "[t]he only question in [its] mind [was] on whether the circumstances surrounding these offenses were so aggravated or exaggerated that they justify consecutive sentencing." The trial court then found:

> I am going to impose consecutive sentencing though because I believe it is clear the defendant in this case is an offender whose record of criminal activity is extensive. So I think that alone justifies consecutive sentencing, but if I'm wrong, then my backup to that would be that he also is a dangerous offender in this matter. . . . When you add his juvenile record together with his adult record that he's accumulated already, then you have quite an impressive list, especially, for a person this young, of criminal activity. Of course, in his adult convictions we have two assaults which causes me concern and possession of a deadly weapon causes me great concern.

Juvenile delinquent adjudications may be considered by the trial court in determining whether a defendant has an extensive record of criminal activity. *See State v. Gann*, 251 S.W.3d 446, 465 (Tenn. Crim. App. 2007); *State v. Mickens*, 123 S.W.3d 355, 396 (Tenn. Crim. App. 2003).

Defendant, who was twenty-one years old at the time of the commission of the charged offenses, has been engaging in criminal activities since he was nearly twelve years old. Although many of his numerous delinquent acts did not result in an adjudication, he does have two juvenile adjudications for aggravated burglary which would have been Class C felonies had the offenses been committed as an adult. His juvenile adjudications also include assault, theft, and burglary of a building. Defendant was convicted of aggravated burglary when he was eighteen years old and was sentenced on February 3, 2003, to three years. While on release into the community, Defendant was convicted of vandalism, two counts of assault, and unlawful possession of a weapon.

-12-

Based on our review, we conclude that the trial court's imposition of consecutive sentences based upon the defendant's extensive record of criminal activity was supported by the record, and only one factor is needed for the trial court to act within its discretion to impose consecutive sentences. *See* T.C.A. § 40-35-115, Sentencing Comm'n Cmts. We further conclude that an extended sentence is "justly deserved in relation to the seriousness of the offense" and "no greater than that deserved" under the circumstances. Defendant is not entitled to relief on this issue.

## CONCLUSION

After a thorough review, we affirm the judgments of the trial court.

_____
THOMAS T. WOODALL, JUDGE